## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.;* | ) | |
| SUZANNE ALT, *et al.,* | ) | Case No. 3:16-cv-0549 |
| | ) | (Consolidated) |
| Plaintiffs, | ) | |
| | ) | **JUDGE TRAUGER** |
| vs. | ) | |
| | ) | |
| ANESTHESIA SERVICES ASSOCIATES, | ) | |
| PLLC, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT RUSSELL S. SMITH, D.C.'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Defendant Russell S. Smith ("Defendant" or "Dr. Smith") respectfully submits this Memorandum of Law in Support of his contemporaneously-filed Motion to Dismiss. In further support of this Motion, Dr. Smith states as follows:

## PROCEDURAL BACKGROUND

This matter was originally brought as a *qui tam* action by relator Suzanne Alt on March 9, 2016. Doc. 1. It was consolidated with several other pending *qui tam* actions on April 15, 2019. Doc. 42. The United States stated its intent to intervene in the consolidated action on April 22, 2019. Doc. 43. The State of Tennessee announced its intent to intervene on that same day. Doc. 44. On July 22, 2019 the United States of America and the State of Tennessee filed its Consolidated Complaint in Intervention which, for the first time, added Dr. Smith as a defendant to the action. Doc. 65. Relators Suzanne Alt and Allison Chancellor filed Amended Complaints on July 22, 2019. Docs. 63, 66. Dr. Smith files the Motion to Dismiss and contemporaneous Memorandum of Law in Support in response to the Consolidated Complaint as well as the amended complaints of the relators.

1

## FACTUAL BACKGROUND

The United States of America and the State of Tennessee ("Plaintiffs") brought this action under the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "FCA"); the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-182 to -185 (the "TMFCA"), the Federal Priority Statute, 31 U.S.C. § 3713, and common law theories of payment by mistake, unjust enrichment, and fraud against a number of defendants. The Plaintiffs allege that the defendants, Anesthesia Services Associates, PLLC d/b/a Comprehensive Pain Specialists ("CPS"), Peter B. Kroll, M.D. ("Dr. Kroll"), John Davis ("Mr. Davis"), Stephen R. Dickerson, M.D. ("Dr. Dickerson"), Gilberto A. Carrerro, M.D. ("Dr. Carrerro"), and Russell S. Smith, D.C. ("Dr. Smith") either submitted false claims or caused others to submit false claims for urine drug tests, genetic testing, and psychological testing. *See generally* Complaint, Doc. 65.

In support of these claims, Plaintiffs allege a wide-ranging scheme perpetrated by the main physician-owners of CPS, Dr. Dickerson, Dr. Carrero, and Dr. Kroll (the "physician-owners"), and John Davis, the Chief Executive Officer. Specifically, the Complaint alleges that CPS through Davis and its physician-owners implemented unlawful policies and procedures which resulted in the submission and payment of false claims by the federal and state healthcare programs. *Id.*, ¶¶ 3, 4, 6. Dr. Dickerson was a founding member of CPS when it was formed as Skyline Anesthesia Services, PLLC in July 2000. *Id.*, ¶ 75. Dr. Carrero joined the company in 2004 and Dr. Kroll joined in 2007. *Id.*, ¶¶ 76, 79. Mr. Davis became CEO in 2011 and after that time, the Plaintiffs allege that CPS's scheme to submit false claims began in earnest. *Id.*, ¶ 82.

Plaintiffs allege that CPS, through Davis and the physician-owners took steps to ensure providers were ordering medically unnecessary testing including, instituting a "standing order"

2

whereby urine drug testing was performed on virtually every single patient regardless of patient risk levels. *Id.*, ¶ 4. The standing order was allegedly executed by Dr. Kroll and Dr. Dickerson. *Id.*, ¶ 134. CPS further maximized its profits by opening its own testing facility beginning in 2012 where urine drug testing was performed. *Id.*, ¶¶ 123–33. Following the success of this program, CPS, through Davis and the physician-owners expanded its policies and procedures to include submission of claims for genetic blood testing and psychological testing which allegedly did not meet requirements for payment and which were not medically necessary. *Id.* at ¶ 6.

In further support of this scheme, Plaintiffs allege that Davis, with the knowledge of the CPS physician-owners, adopted a bonus program which incentivized CPS's mid-level providers to order urine drug testing, genetic testing, and psychological testing as well as other ancillary services. *Id.*, at ¶ 7. The physician-owners and Davis allegedly produced and promulgated urine drug screening guidelines which resulted in the over-utilization of these tests which the Plaintiffs allege were not medically necessary. *Id.*, ¶ 166. The Complaint further alleges that Davis himself altered codes submitted by the providers, implemented a policy to obtain reimbursement to bill for non-reimbursable acupuncture, and entered into a scheme that allowed him to receive kickbacks for referring durable medical equipment ("DME") to CCC Medical. *Id.*, ¶ 12. As a result of this scheme, the Plaintiffs allege that Dr. Dickerson directly submitted over seven hundred and fifty (750) false claims, Dr. Carrero directly submitted approximately eight hundred (800) false claims, and Dr. Kroll directly submitted or caused to be submitted over fifteen hundred (1500) false claims. *Id.*, ¶¶ 15–17.

In comparison to the detailed allegations against CPS, Mr. Davis, and the physician-owners of CPS, the Complaint generally alleges that Dr. Smith is a chiropractor who did not personally treat patients at CPS. *Id.*, ¶ 8. The Complaint alleges that CPS purchased Dr. Smith's clinic. *Id.*

3

Following CPS's purchase of Dr. Smith's clinic, Dr. Smith continued to oversee the day-to-day management of this clinic and two other clinics. *Id.* The Complaint does not allege that Dr. Smith owned any part of CPS, had control or input into CPS's policies and procedures, instituted the standing orders regarding urine drug testing, ordered urine drug testing, psychological testing, or genetic testing for any patients whether medically necessary or not, or directly submitted false claims for medically unnecessary tests. Rather, the Complaint states in conclusory terms that, because of his compensation arrangement with CPS, Dr. Smith pressured providers at his clinic to perform medically unnecessary tests and that CPS was aware that he was pressuring his providers, resulting in his termination from CPS. *Id.* at ¶¶ 282–85. The Complaint also concludes, in summary fashion, that Dr. Smith directly benefited from the submission of the allegedly false claims. *Id.* at 198.

The Complaint also references the *qui tam* action filed by Dr. Smith and directly adopts and cites the claims identified by Dr. Smith in that action as evidence of *Dr. Smith's* wrongdoing - despite the fact that Dr. Smith alleged that *CPS*, not Dr. Smith, submitted false claims. *Id.* at ¶ 210. Dr. Smith, along with two other relators, filed a *qui tam* action in the United States District Court for the Eastern District of Tennessee against CPS asserting that CPS adopted policies and procedures which led to medically unnecessary urine drug testing. Doc. 1, Case No., 3:18-cv-01025 (M.D. Tenn.).[1] That case was ultimately transferred to this court. In that Complaint, the relators, including Dr. Smith, identified specific allegedly false claims that CPS submitted. *Id.*, ¶ 55. Relying on that document, the Plaintiffs recited those claims in its Consolidated Complaint in Intervention. Doc. 65, ¶ 210. On April 23, 2019, the United States of

---

[1] The Court may take judicial notice of this Complaint because it is a public record. A court may take notice of "public records, including judicial proceedings." *Winget v. JP Morgan Chase Bank, NA*, 537 F.3d 565, 576 (6th Cir. 2008).

4

America and the State of Tennessee ultimately declined to intervene in the action brought by Dr. Smith and the action was dismissed. Case No. 3:18-cv-01025, Docs. 28, 29.

Relying on the conclusory allegations contained in the Consolidated Complaint in Intervention and CPS's wrongdoing identified by Dr. Smith in his *qui tam* action, the Plaintiffs seek to hold Dr. Smith liable for the actions of the physician-owners and other providers at CPS. Because the Plaintiffs have not adequately alleged the causal connection between Dr. Smith's actions and the submission of false claims to the government, the Plaintiffs' action should be dismissed.

## LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under *Federal Rule of Civil Procedure* 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept [the] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

"To state a claim under the FCA, the plaintiff must sufficiently plead: [1] that the defendant made a false statement or created a false record [2] with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information; [3] that the defendant . . . submitted

5

a claim for payment to the federal government . . . and [4] that the false statement or record [was] material to the Government's decision to make the payment." *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016) (alterations omitted); *see also* 31 U.S.C. § 3729(a)(1)(A), (B), and (G). The TMFCA is substantively similar to the FCA and analysis of the FCA claims apply equally to claims arising under the TMFCA. *See United States ex rel. Dennis v. Health Mgmt. Assoc.*, Case No. 3:09-cv-00484, 2013 U.S. Dist. LEXIS 5212, *17 (M.D. Tenn. Jan. 14, 2013). ("The claims under the TMFCA are likewise co-extensive with those asserted under the FCA; therefore, the FCA analysis also applies to the relator's claims under the TMFCA.").

Further, a complaint alleging violations of the False Claims Act must also comply with Rule 9(b)'s requirement that fraud be pled with particularity. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (citing *United States ex rel. Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)). Rule 9(b) requires that, in alleging fraud under the FCA, a relator must state with particularity the circumstances constituting the alleged misconduct. *Id.* (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007)). Moreover, "pleading an actual false claim with particularity is an indispensable element of a complaint that alleges a FCA violation in compliance with Rule 9(b)." *Bledsoe*, 501 F.3d at 504. As the Sixth Circuit has explained, a fraudulent claim itself "is the *sine quo non* of a False Claims Act violation." *United States ex rel. Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006).

Accordingly, to properly plead fraud under the FCA, a plaintiff must allege with particularity: (1) "the time, place, and content of the alleged misrepresentation" (including a specific fraudulent claim(s)); "the fraudulent scheme," (3) the defendant's fraudulent intent, and (4) the resulting injury of inducing the government to pay a false claim to the defendant. *Bledsoe*,

6

501 F.3d at 504; *U.S. ex rel. Snapp. Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008). For each "false scheme" alleged, a plaintiff must plead with particularity each scheme and provide specific examples of fraudulent conduct for each scheme. *Bledsoe*, 501 F.3d at 509; *U.S. ex rel. White v. Gentiva Health Servs.*, No. 3:10-cv-394, 2014 U.S. Dist. LEXIS 86156, *15 (E.D. Tenn. June 25, 2014). Further, "where a relator alleges a complex and far-reaching scheme," that includes a "long chain of casual links from defendants' conduct to the eventual submission of false claims" . . . "Rule 9(b) requires relators to adequately allege the entire chain—from start to finish— to fairly show defendants caused false claims to be filed." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914–15 (6th Cir. 2017).

## LEGAL ARGUMENT

**I.      The Complaint's Allegations are Insufficient to Hold Dr. Smith Liable for Allegedly False Claims Submitted by Others.**

The Complaint seeks to hold Dr. Smith liable for all of the purportedly false claims submitted by CPS providers and mid-levels across CPS's sixty office locations in twelve states solely based on his managerial position at three of CPS's clinics in East Tennessee. The Complaint, however, assumes Dr. Smith's liability in conclusory fashion based on his managerial role of the three clinics without identifying the "causal links" from his conduct to the submission of false claims. Further, the Complaint infers that Dr. Smith acted with the required knowledge under the FCA because he managed the clinics and received compensation from CPS. FCA claims require more than just conclusory statements and broad inferences and accordingly, the claims against Dr. Smith should be dismissed.

### A. Plaintiffs fail to plead the causal link between Dr. Smith's conduct and the submission of false claims with the required particularity.

The Complaint does not allege that Dr. Smith directly submitted false claims. Indeed, it specifically alleges that Dr. Smith was not involved with providing patient care at all during his employment with CPS. Doc. 65, ¶ 8. Rather, the Complaint alleges that Dr. Smith knowingly presented false claims to the government by causing others, including CPS providers and mid-levels, to submit urine drug tests, genetic tests, and psychological tests which were not medically necessary in violation of Section 3279(a)(1)(A) of the FCA. In support of this claim, the Plaintiffs state in conclusory fashion that Dr. Smith "pressured" the providers in his clinic to order unnecessary testing and submit those claims for the government because he has a "financial incentive" to do so. Doc. 65, ¶ 8. However, the Plaintiffs have failed to adequately plead the causal connection between Dr. Smith's conduct and the submission of an actual false claim to the government and accordingly, Plaintiffs' claims should be dismissed.

Section 3729(a)(1)(A) of the FCA prohibits "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). "A claim under § 3729(a)(1)(A) 'requires proof that the alleged false or fraudulent claim was presented to the government.'" *Bristol-Myers Squibb*, 874 F.3d at 914 (quoting *United States ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 445 (6th Cir. 2008). As the Sixth Circuit has explained, this is a "stringent" requirement, particularly in cases where it is alleged that the defendant caused a third party to submit false claims. *Bristol-Myers Squibb*, 874 F.3d at 914. Merely alleging a fraudulent scheme is insufficient to survive a motion to dismiss. Rather, the plaintiff "must provide a representative claim that describes each step with particularity." *Id.* at 915.

In *Bristol-Myers Squibb*, the relators alleged that two pharmaceutical companies engaged in a complex scheme to improperly promote an antipsychotic drug. *Id.* at 911. Specifically, the relators alleged that the companies engaged in a scheme to encourage providers to prescribe the drug for unapproved uses and that as a result of the scheme, some of the off-label prescriptions were paid for by government program. *Id.* As a result of this scheme, the relators filed a *qui tam* alleging, among other claims, that the defendants violated Section 3792(a)(1)(A). The district court granted the defendants' motion to dismiss those claims and the Sixth Circuit affirmed. *Id.* at 915. The court noted that in order to properly allege a complex and wide-raging scheme, "the complaint must allege specific intervening conduct" that "describes each step with particularity" and culminates in a "representative claim" submitted as a result of the scheme. *Id.* Because relators failed to adequately allege the causal link between the defendants' scheme and a false claim, the motion to dismiss was granted. *Id.* Thus, in order to adequately state a False Claims Act violation, the plaintiffs must allege each causal connection, beginning with the defendant's conduct and culminating in the submission of a false claim to the government as a result of the defendant's actions.

Further, conclusory allegations of each step in the scheme are insufficient to satisfy the particularity requirements of Rule 9(b) as demonstrated by a recent case with similar facts to the one at bar. The United States District Court for the Northern District of California recently granted the defendants' motion to dismiss in a case where the relators alleged that the defendants systematically marketed urine drug testing machines by falsely representing that the machine could perform quantitative drug testing when in fact the machines could only perform qualitative testing. *United States v. Carolina Liquid Chemistries, Corp.*, Case No. 13-cv-01497, 2019 U.S. Dist. LEXIS 118400 (N.D. Cal. July 19, 2019). Relators alleged that providers, relying on the

9

manufacturer's coding instructions and marketing materials, submitted numerous false claims overcharging Medicare and Medicaid for the services actually performed. *Id.* at \*2–3. Despite noting that the government had alleged "the reason the alleged marketing was fraudulent, identifying specific codes that should not have been paid, and the precise amounts that the government would have overpaid," the court still granted defendants' motion to dismiss because the complaint failed to describe the allegedly fraudulent marketing activities with the particularity required by Rule (b). *Id.* at \*20. The court held "[a] particularized scheme, absent sufficient details to show that it took place is insufficient to satisfy Rule 9(b)." *Id.* at \*21. Merely alleging that fraudulent activity took place was insufficient, the government was required to allege the "who, what, when, where and how of the alleged fraud." *Id.*

Reviewing the Plaintiffs' Complaint in this light, the conclusory allegations against Dr. Smith are wholly insufficient to state a claim under the FCA. The Complaint does not allege that Dr. Smith was an owner of CPS or held any leadership position at CPS. It does not allege that he instituted or approved the standing order which required quantitative urine drug testing on each sample. It does not allege that he instituted or approved any other policy or procedure that resulted in the submission of false claims do the government. Rather, the Plaintiffs generally allege that CPS purchased a clinic from Dr. Smith and asked him to manage two more. The Complaint further alleges under his compensation arrangement with CPS, he was incentivized to pressure the providers at his clinics to order medically unnecessary tests. Doc. 65, ¶ 92. The Plaintiffs further allege that Dr. Smith did pressure his providers to perform unnecessary tests and admitted that CPS submitted false claims to the government for tests performed at his facility.

Importantly, however, the Complaint provides no details regarding Dr. Smith's allegedly fraudulent conduct. It does not allege how he pressured his providers—whether through verbal

10

reminders or written policies or any other tactic. It does not allege what providers he allegedly pressured or even when and where this alleged pressure took place. Much like the plaintiff in *Caroline Liquid*, the government has alleged the existence of a "particularized scheme," but fails to plead adequate details showing the alleged fraudulent behavior actually took place. For this reason, Plaintiffs' FCA claims should be dismissed.

Nor can the Plaintiffs rely on the alleged wrongdoing of other CPS providers to hold Dr. Smith liable under the FCA for the false claims submitted by CPS. The FCA contains a "rigorous" scienter requirement. *Universal Health Servs., Inc. v. United States ex rel Escobar*, 136 S. Ct. 1989, 2002 (2016). A person only "knowingly" submits a false claim if he does so with "actual knowledge" or act in either "deliberate ignorance" or "reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). The Complaint does not allege that Dr. Smith was in a position to approve CPS's policies and procedures related to urine drug testing, genetic testing, or psychological testing. It also does not allege that he was in a leadership position that would give him access to all the billing activities of CPS's providers. The Plaintiffs cannot impute the knowledge or reckless disregard of CPS's physician-owners to Dr. Smith in order to adequately plead their claim against him. *See, e.g. United States ex rel. Branhan v. Mercy Health Sys.*, Case No. 98-3127, 1999 U.S. App. LEXIS 18509 (6th Cir. Aug. 5, 1999) ("Rule 9(b) does not permit a plaintiff to allege fraud by indiscriminately grouping all of the individual defendants into one wrongdoing monolith.").

Even if the Complaint adequately alleged that Dr. Smith engaged in fraudulent conduct (which it does not), the Plaintiffs fail to adequately allege that false claims were actually submitted as a result of Dr. Smith's conduct. While it is true the Plaintiffs identify allegedly false claims which were submitted by the CPS clinics that Dr. Smith managed, the Complaint does not allege

11

that these claims were submitted because of actions taken by Dr. Smith.  As an initial matter, those claims were identified by Dr. Smith in his *qui tam* action which the Intervening Plaintiffs chose not to intervene in.  Dr. Smith alleged that those claims were submitted by CPS as a result of the policies and procedures adopted by CPS and its physician-owners.  Case No. 3:18-cv-01025, Doc. 1, ¶ 55.  That complaint did not allege that those claims were submitted as a result of any action taken by Dr. Smith.  However, the Plaintiffs here have adopted those claims, hoping to draw the inference that Dr. Smith was either personally responsible for the submission of those claims or caused those claims to be submitted by personnel at his clinics.  Mere inference is insufficient to plead an FCA claim.  Plaintiffs "must identify a representative claim with *specificity* as to each necessary component of the alleged scheme; identifying a claim that merely infers one or more of these elements is inadequate."  *Bristol-Myers Squibb*, 874 F.3d at 920 (emphasis original).  The Plaintiffs must allege that an actual false claim was submitted through the conduct of the defendant.  "[P]leading an actual false claim with particularity is an indispensable element of a complaint that alleges an FCA violation in compliance with Rule 9(b)."  *Bledsoe*, 501 F.3d at 504.  Further, "[i]n a multifaceted scheme . . . the failure to allege which facet of the broader scheme is implicated in a representative claim fails to give defendants fair notice of the specific conduct with which they are charged."  *United States ex rel. Roycroft v. GEO Grp., Inc.*, 722 Fed. Appx. 404, 408 (6th Cir. 2018).  The Plaintiffs' allegations do not meet this rigorous standard and accordingly, should be dismissed.

In sum, the Plaintiffs have failed to plead the essential causal connections between Dr. Smith's conduct and the submission of false claims to the government.  The Complaint does not identify the providers that Dr. Smith allegedly pressured, how he pressured those providers, or when these events occurred.  The lone conclusory allegation that Dr. Smith was incentivized to

12

pressure his providers to order unnecessary testing and did pressure his providers is insufficient to plead fraud under 9(b). Further, Plaintiffs have not connected Dr. Smith's alleged conduct with an actual submission of a false claim to give rise to liability under the False Claims Act. Instead, the Plaintiffs rely on claims already reported by Dr. Smith in a prior action, hoping to satisfy the pleading requirements of 9(b) through inference alone. For these reasons, the claims against Dr. Smith should be dismissed.

**B.      Plaintiffs' Claims Under Section 3792(a)(1)(B) and (a)(1)(G) Should Be Dismissed.**

Plaintiffs' claims under Section 3729(a)(1)(B) against Dr. Smith fail for many of the same reasons that the Section 3729(a)(1)(A) claims fail. Section 3729(a)(1)(B) imposes liability on someone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B) This section requires plaintiffs to "plead a connection between the alleged fraud and an actual claim made to the government." *Chesbrough*, 655 F.3d at 473. Section 3729(a)(1)(B) does not itself impose liability for making the false claim, but it requires one to have been made for the false records or statements to be actionable. *See United States ex rel. Winkler v. BAE Sys.*, No. 10-cv-13558, 957 F. Supp. 2d 856, 2013 WL 3724784, at *18 (dismissing § 3729(a)(1)(B) claim because relator failed to "plead a connection between the alleged fraud and an actual claim made to the government"); *see also U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 1:11-CV-962-WSD, 2013 U.S. Dist. LEXIS 75696, at *4 (N.D. Ga. May 17, 2013) ("To state a claim under either [§ 3729(a)(1)(A) or (a)(1)(B)], a relator must allege a 'false claim.' Under subsection (a)(1)(B), a relator is required also to allege a 'false record or statement.' Both provisions are subject to the heightened pleading requirements of Rule 9(b).").

As in the Section (a)(1)(A) claim, Plaintiffs have failed to plead the connection between any false statement allegedly made by Dr. Smith and a false claim actually made and paid to the government. As the Complaint acknowledges, Dr. Smith was not responsible for providing care to CPS patients. As a result, he did not submit claims for any testing that he or any other provider ordered. The Complaint does allege, upon information and belief, that Dr. Smith is a Medicare provider and that he "pressured" his providers to order unnecessary testing in order to maximize his compensation. Doc. 65, ¶¶ 282, 408. Those conclusory allegations, without more, are insufficient to state a claim under Section (a)(1)(B) because it presents no causal connection between any false statement made by Dr. Smith and false claims submitted to the government. The Plaintiffs may not "rely on a too-attenuated chain connecting alleged false statements to the submission of claims" to adequately plead a claim under the FCA. *Bristol-Myers Squibb*, 674 F.3d at 915.

Similarly, Plaintiffs' claims under Section (a)(1)(G) fail to plead Dr. Smith's culpability with the requisite particularity. This section of the FCA imposes civil liability on "any person who … knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government," including for obligations arising . . . from the retention of any overpayment." 31 U.S.C. § 3729(a)(1)(G). Under this section, a plaintiff must "allege facts that show defendants received overpayments from the government and failed to refund those payments." *Bristol-Myers Squibb*, 674 F.3d at 916 (citing 31 U.S.C. § 3729(a)(1)G); *Prather*, 838 F.3d at 774). A plaintiff may also "plead[] adequate 'proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation'—a duty to pay money or property." *Bristol-Myers Squibb*, 674 F.3d at 916 (quoting *Chesbrough*, 655 F.3d at 473). Here, the Complaint alleges that Dr. Smith was not providing patient care and was

14

compensated by CPS for the administrative services he provided at the CPS clinics he managed. Doc. 65, ¶ 282. Accordingly, Dr. Smith did not receive any overpayments from the government because he did not submit claims to the government. Only CPS submitted claims to, and received overpayments, from the government. In addition, as with the Section (a)(1)(A) and (B) claims, the Plaintiffs have failed to identify with specificity what false statements that Dr. Smith made related to claims made for government payment. Further, the Plaintiffs have not alleged any facts suggesting that Dr. Smith was under an affirmative obligation to pay the government money or property at the time that he made these alleged false statements, thereby negating Plaintiffs' Section (a)(1)(G) claim.

Because Plaintiffs have failed to adequately allege with particularity the allegedly false statement made by Dr. Smith which resulted in the payment of false claims, their claims under Sections (a)(1)(B) and (a)(1)(G) the FCA and claims under the TMFCA fail as a matter of law and should be dismissed.

## II. Plaintiffs' Remaining Claims Against Dr. Smith Fail To State a Claim Upon Which Relief Can be Granted.

In addition to the claims under the FCA and TMFCA, Plaintiffs also assert a claim under the Federal Priority Statute and Fraudulent Conveyances statute, 31 U.S.C. § 3713 and a number of state law claims against Dr. Smith. All of these claims fail as a matter of law and should be dismissed.

### A. Dr. Smith was not an Owner of CPS and Did Not Direct Payment of Its Assets.

Plaintiffs assert a claim under the Federal Priority Statute and Fraudulent Conveyances Statute, 31 U.S.C. § 3713, alleging that CPS continued to pay profits to the Owners and pay debts to others despite knowing that the United States had claims against CPS and the Owners. Doc. 65,

¶¶ 453–461.  The Complaint does not allege that Dr. Smith was an owner or executive of CPS or that he had any decision-making authority regarding the dispersion of profits or payments to creditors.  It also does not allege that the clinics he oversaw disbursed payments to creditors or to the Owners of CPS.  Because Dr. Smith was not in a leadership position at CPS and did not direct the payments of its assets, this claim fails to state a claim against Dr. Smith and should be dismissed.

### B.  Plaintiffs' Common Law Fraud Claims Fails Because It Does Not Meet the Pleading Standard of Rule 9(b).

Plaintiffs' also assert a common law fraud claim against Dr. Smith.  Doc. 65, ¶¶ 471–77.  This claim, like those asserted under the False Claims Act, fail because the Plaintiffs do not plead this claim with the particularity required under Rule 9(b).  This claim is governed by federal common law because it "involves rights of the United States under a nationwide federal program." *United States v. Rogan*, 459 F. Supp. 2d 692, 721 (N.D. Ill. 2006) *aff'd* 517 F.3d 449 (7th Cir. 2008); *see also United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606 (8th Cir. 1999).   In order to state a claim for common law fraud, a plaintiff must allege: "(1) a false statement of material fact, (2) knowledge or belief of the falsity of the party making, it, (3) intention to induce the party to act, (4) action by the other party in reliance of the truth of the statements, and (4) damages to the other party resulting from such reliance." *Id.* (quoting *Indemnified Capital Invs., SA v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1412 (7th Cir. 1993)).

Like Plaintiffs' FCA claims, the common law fraud claim must meet the Rule 9(b) particularity standard.  "We interpret Rule 9(b) as requiring the plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012) (quoting *Bennett v. MIS Corp.*, 607 F.3d

16

1076 (6th Cir. 2010)). Plaintiffs' Complaint does not allege the key facts necessary to sustain its fraud claim. Plaintiffs assert that Dr. Smith pressured his providers to order unnecessary medical tests in order to maximize his compensation, Doc. 65, ¶ 282, but fail to identify how he asserted this pressure, what providers he allegedly pressured, or when and where this alleged pressure took place. Plaintiffs have also not alleged that Dr. Smith asserted this pressure with the express intent of defrauding the government. In sum, Plaintiffs have failed to allege the "time, place, and content" of the alleged misrepresentations made by Dr. Smith. For these reasons, Plaintiffs' common law fraud claim should be dismissed.

Even if the fraud claim is not dismissed, the Plaintiffs should be limited to the amount that the government can show Dr. Smith received wrongfully. "Recovery on a claim for fraud is limited to the amount improperly provided to the defendant." *United States ex rel. Robinson-Hill v. Nurses' Registry & Home Health Corp.*, Case No. 5:08-145-KKC, 2015 U.S. Dist. LEXIS 68222, *9 (E.D. Ky. May 27, 2015). Thus, the Plaintiffs could recover any funds that were erroneously paid to Dr. Smith, but could not recover punitive damages or penalties. For this reason, any claim for punitive damages or penalties under this theory should be dismissed.

      **C.**    **The Payment by Mistake and Unjust Enrichment Claims Should be Dismissed Because Dr. Smith Did Not Receive Payment Through His Control of CPS.**

Plaintiffs also assert claims for common law payment by mistake and unjust enrichment. In order to state a claim for common law unjust enrichment, the Plaintiffs must allege "(1) the Government had a reasonable expectation of payment, (2) [the defendant] should reasonably expect to pay, or (3) 'society's reasonable expectations of person and property would be defeated by nonpayment.'" *Rogan*, 459 F. Supp. 2d at 728 (quoting *Provident Life & Accident Ins. Co v. Waller*, 906 F.2d 985, 993–94 (4th Cir. 1990)). Similarly, under a payment by mistake theory, the

17

Plaintiffs must show "(1) a payment was made; (2) the payment was made based on a mistake, error, or that it was illegally made; and (3) the party receiving the payment did not have the right to the payment." *United States ex rel. Norris v. Anderson*, 271 F. Supp. 3d 950, 959 (M.D. Tenn. 2017).

Both of these claims fail because Dr. Smith did not submit any claims to Medicare or TennCare or receive any reimbursement for clinical services, medical testing, or durable medical equipment. As the Complaint explains, Dr. Smith was compensated by CPS for the purchase of his clinics and for his role as manager of three clinics in East Tennessee. Doc. 65, ¶ 91. The Complaint does not allege that Dr. Smith was involved in patient care or directly submitted claims for reimbursement. Further, unlike in cases where non-provider defendants were held liable under this theory, Dr. Smith did not own or control CPS and did not direct the allegedly wrongful conduct. *See e.g., Norris*, 271 F. Supp. 3d at 959 (denying motion to dismiss payment-by-mistake claim where defendants "owned and controlled" the medical clinics); *United States ex rel. Robinson-Hill v. Nurses' Registry & Home Health Corp.*, Case No. 5:08-145-KKC, 2012 U.S. Dist. LEXIS 14224, *23 (E.D. Ky. October 2, 2012) (holding plaintiff adequately assert unjust enrichment and payment-of-mistake claims where "individuals received payment indirectly through his or her control of a company that received those improper payments and the individuals participated in the wrongful conduct."). For these reasons, Plaintiffs' claims should be dismissed.

## CONCLUSION

While Plaintiffs have alleged a wide-ranging scheme related to unnecessary medical testing, including urine drug testing, genetic testing, and psychological testing, the False Claim Act claims against Dr. Smith fail because the Plaintiffs have not alleged Dr. Smith's wrongful conduct with the required particularity. Further, Plaintiffs have also failed to allege the causal

18

connection between any alleged misconduct by Dr. Smith and the submission of a representative false claim to the government. For these reasons, Plaintiffs' common law fraud claim fails as well. The Plaintiffs' remaining claims fail to state a claim upon which relief can be granted because Dr. Smith did not own, control, or hold a senior leadership position at CPS and did not receive payments from the government as a result of his ownership or control of CPS. Dr. Smith respectfully requests that the Complaint be dismissed.

Respectfully submitted this 7th day of October, 2019.


By: /s/ *Daniel T. Swanson*
Daniel T. Swanson (BPR No. 023051)
Jessica Jernigan-Johnson (BPR No. 032192)
LONDON & AMBURN, P.C.
607 Market Street, Suite 900
Knoxville, TN 37902
Phone: (865) 637-0203
Fax: (865) 637-4850
dswanson@londonamburn.com
jjerniganjohnson@londonamburn.com

*Counsel for Defendant Russell S. Smith, D.C.*

## CERTIFICATE OF SERVICE

       I hereby certify that on October 7, 2019, a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

Kara F. Sweet
US Attorney's Office
Middle District of Tennessee
110 Ninth Avenue S, Suite A-961
Nashville, TN
kara.sweet@usdoj.gov

Philip H. Bangle
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202
philip.bangle@ag.tn.gov

W. Gary Blackburn
Bryant B. Kroll
The Blackburn Firm, PLLC
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
gblackburn@wgaryblackburn.com
bkroll@wgaryblackburn.com

Jeffery S. Roberts
Jeffery S. Roberts and Associates, PLC
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
jeff@middletninjury.com

Don McKenna
Randi McCoy
Hare, Wynn, Newell & Newton, LLP
2025 Third Avenue N, Suite 800
Birmingham, AL 35203
don@hwnn.com
randi@hwnn.com

Jerry E. Martin
Seth Marcus Hyatt
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Irwin B. Venick
Dobbins, Venick, Kuhn & Byassee, PLLC
210 25th Avenue, N Suite 1010
Nashville, TN 37203
Irwinv@dvlawfirm.com

Amy L. Easton
Colette G. Matzzie
Phillips &Cohen LLP
2000 Massachusetts Avenue, N.W.
Washington, DC 20036
Aeaston@phillipsandcohen.com
Cmatzzie@phillipsandcohen.com

O. Stephen Montagnet, III
Zachary M. Bonner
McCraney Montagnet Quin &Noble, PLLC
602 Steed Road Suite 200
Ridgeland, MS 39157
Smontagnet@mmglaw.com
Zbonner@mmglaw.com

Emily Stabile
Phillips &Cohen LLP
100 The Embarcadero Suite 300
San Francisco, CA 94105
Estabile@pcsf.com

20

Andrew F. Solinger
Jennifer L. Weaver
L. Wells Trompeter
Waller, Lansden, Dortch &Davis, LLP
Nashville City Center
511 Union Street Suite 2700
Nashville, TN 37219
Andrew.solinger@wallerlaw.com
Jennifer.weaver@wallerlaw.com
Wells.Trompeter@wallerlaw.com

Michael Kanovitz
Loevy & Loevy
311 N. Albertson St., 3rd Floor
Chicago, IL 60607
mike@loevy.com

Daniel J. Martin
Avery B. Pardee
Michael W. Magner
Michael J. O'Brien
Jones Walker LLP
420 20th Street N., Suite 1100
Birmingham, AL 35203
danielmartin@joneswalker.com
apardee@joneswalker.com
mmagner@joneswalker.com
mobrien@joneswalker.com

Edward M. Yarbrough
Justin W. Adams
Bone McAllester Norton, PLLC
511 Union St., Suite 1600
Nashville, TN 37219
eyarbrough@bonelaw.com
wjadams@bonelaw.com

Alex Fardon
Riley Warnock & Jacobson, PLC
1906 West End Ave.
Nashville, TN 37203
afardon@rwjplc.com

Richard Fisher
Richard Fisher Law Firm
1008 Tasso Road NE
Cleveland, TN 37323
Richardfisher4@cs.com

Sean Estes
Hoyer Law Group, PLLC
2801 W. Busch Blvd., Ste. 200
Tampa, FL 33618
sean@hoyerlawgroup.com

Respectfully submitted this 7th day of October, 2019.

/s/ *Daniel T. Swanson*
ATTORNEY