SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services ("HHS-OIG"), the Railroad Retirement Board ("RRB"), and the Department of Veterans Affairs ("VA") (collectively, the "United States"); the State of Tennessee, acting through the Tennessee Attorney General and Reporter and on behalf of its Medicaid program known as TennCare ("Tennessee"); and Anesthesia Services Associates, PLLC d/b/a Comprehensive Pain Specialists ("CPS") and Peter B. Kroll, M.D. ("Kroll"); and Relators Suzanne Alt ("Alt"), Mary Butner ("Butner"), Dana Brown ("Brown"), Jennifer Pressotto ("Pressotto") and Allison Chancellor ("Chancellor") (collectively, "Relators") (hereinafter, the United States, Tennessee, CPS, Kroll and Relators are referred to collectively as "the Parties"), through their authorized representatives.

RECITALS

A.     CPS is a Tennessee Professional Limited Liability Company with a former principal place of business in Brentwood, Tennessee. CPS is no longer engaged in any business operations and anticipates winding down all business affairs in the near future.

B.     Kroll is an individual residing in Hendersonville, Tennessee.

C.     On March 9, 2016, a *qui tam* was filed by Alt in the Middle District of Tennessee, entitled *United States ex rel. Alt v. Anesthesia Services Associates, PLLC, et al.*, Case No. 3:16-cv-00549.

On March 11, 2016, a second *qui tam* was filed by Butner and Brown in the Middle District of Tennessee, entitled *United States and the State of Tennessee ex rel. Butner and Brown v. Anesthesia Services Associates, PLLC d/b/a Comprehensive Pain Specialists and Peter Kroll and Steven Dickerson*, Case No. 3:16-cv-0561.

On July 18, 2016, a third *qui tam* was filed by Pressotto in the Middle District of Tennessee, entitled *United States and the State of Tennessee ex rel. Pressotto v. Anesthesia Services Associates, PLLC d/b/a Comprehensive Pain Specialists*, Case No. 3:16-cv-1856.

On October 27, 2016, a fourth *qui tam* was filed by Chancellor in the Southern District of Illinois, entitled *United States, and the States of Illinois, Indiana, Iowa, Michigan, North Carolina, Tennessee and Virginia ex rel. Chancellor v. Anesthesia Services Associates, PLLC d/b/a Comprehensive Pain Specialists et al.*, Case No. 16-cv-01190. This case was transferred to this Court on January 25, 2019 (MDTN Civil Case No. 19-cv-00102).

D.    The *qui tam* actions referenced in Paragraph C above were consolidated in the United States District Court for the Middle District of Tennessee on April 15, 2019, under the caption *United States ex rel. Alt v. Anesthesia Services Associates, PLLC d/b/a Comprehensive Pain Specialists et al.*, Case No. 3:16 cv-00549 (the "Civil Action"), asserting claims pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-3733 and the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 to -185 (the "False Claims Acts"), relating to, among other things, allegedly false claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare"), the RRB, the Veterans Health Administration, 38 U.S.C. Chapter 17, and the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"), administered by the State of Tennessee's TennCare program, for urine drug testing, genetic testing, and psychological testing by CPS, members in CPS (including Kroll), and certain employees of CPS, including its Chief Executive Officer. The United States and Tennessee filed a Consolidated Complaint in Intervention in the Civil Action on July 22, 2019, asserting claims for violation of the False Claims Acts against CPS, its former Chief Executive Officer, three of its members, including Kroll, and a former manager of certain CPS clinics. CPS

2

and Kroll submitted Answers in the Civil Action in which they stated that they had not submitted or caused to be submitted any false claim to any Federal health care program or TennCare, including for the Covered Conduct (defined below), and otherwise did not engage in any wrongdoing.

      E.      This Agreement resolves the United States and Tennessee's claims that: (i) from March 1, 2011 through May 31, 2018, CPS allegedly submitted or caused to be submitted false claims for the following: a) medically unnecessary urine drug testing (UDT) billed using Healthcare Common Procedure Coding System (HCPCS) code G0483; b) Specimen Validity Testing (SVT) billed using HCPCS codes 82565, 82570, 82670, 83986, 84075, and 84295; c) medically unnecessary genetic testing billed using HCPCS codes 81225, 81226, 81227, 81355 and 81401; d) psychological testing billed using HCPCS code 96103; e) non-reimbursable acupuncture billed under HCPCS Code L8680 and any related claims under HCPCS Codes 64999, 64550 and 64555; and f) testing and procedures listing Kroll as the Rendering Provider when Kroll did not order the test or perform the procedure; and (ii) from March 1, 2011 through May 31, 2019, unless stated otherwise below, Kroll allegedly submitted or caused to be submitted false claims for the following: a) medically unnecessary UDT to RRB and TennCare; b) Specimen Validity Testing (SVT) billed using HCPCS codes 82565, 82570, 82670, 83986, 84075, and 84295; c) medically unnecessary genetic testing billed to TennCare using HCPCS codes 81225, 81226, 81227, 81355 and 81401; d) non-reimbursable acupuncture billed to Medicare under HCPCS Code L8680 and any related claims under HCPCS Codes 64999, 64550 and 64555; e) claims submitted to Medicare under HCPCS Code L8680 with a date of service after March 31, 2014; and f) procedures performed between May 20-30, 2017 listing Kroll as the Rendering Provider when Kroll did not perform the procedure. That conduct is referred to herein as the "Covered Conduct."

3

F.     On August 11, 2017 and March 11, 2019, the Centers for Medicare & Medicaid Services (CMS) suspended Medicare payments to CPS, pursuant to 42 C.F.R. § 405.371(a)(2), based upon a determination by the United States that credible allegations of fraud existed. The amount of approved, paid claims held in suspense as of September 30 is $2,196,663.94. This is the "Suspended Amount."

G.     This Agreement is neither an admission of liability by CPS or Kroll nor a concession by the United States or Tennessee that their claims are not well founded.

H.     Relators claim entitlement to a share of a portion of the proceeds of this Agreement under 31 U.S.C. § 3730(d) and claim entitlement to a share of a portion of the proceeds of this Agreement for Relators' reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS]

1.     Within ten days of the Effective Date of this Agreement, CPS agrees to pay the United States a total of $2,946,663.94 (the "CPS Settlement Amount"), using a combination of the Suspended Amount and an additional cash payment as follows:

> a.     CPS agrees that the United States shall retain the Suspended Amount forevermore. CPS expressly relinquishes any and all rights of any kind that it may have with respect to the Suspended Amount, including, but not limited to: any and all claims or rights to have an overpayment determined under 42 C.F.R. § 405.372(c), any and all rights to payment of those Suspended Amount funds, and any and all rights to appeal, whether

formally or informally and whether administratively or judicially, the right of the United States and/or CMS to retain those funds, and any other rights CPS may have to challenge the withholding or the suspension in any respect.

b.      CPS shall make an additional cash payment of Seven Hundred Fifty Thousand Dollars ($750,000.00) by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Middle District of Tennessee.

The Parties agree that the payment of the CPS Settlement Amount to the United States shall constitute restitution within the meaning of Section 162(f) of the Internal Revenue Code of 1986, as amended (the "Code"). The Parties agree to make any returns or filings in respect to the Suspended Amount as may be required by the Code and any regulations thereunder.

2.      Kroll shall pay to the United States and the State of Tennessee the amount of One Hundred Fifty Thousand Dollars ($150,000.00) ("Kroll Settlement Amount") no later than ten days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Middle District of Tennessee. $74,980.86[1] of the Kroll Settlement Amount is restitution.

3.      As soon as reasonably practicable after the United States receives the CPS Settlement Amount in Paragraph 1 and the Kroll Settlement Amount in Paragraph 2, the United States shall pay by electronic funds transfer (i) $249,080.68 to Tennessee; and (ii) $610,684.62 to

---

[1] Of the restitution amount for Kroll, $70,002.90 is attributable to the United States ($51,685.55 to Medicare, $12,181.31 to RRB, and $6,136.04 to Federal Medicaid) and $4,977.96 is attributable to Tennessee/TennCare.

5

Relators.[2] Within five business days after receipt of the CPS Settlement Amount and the Kroll Settlement Amount, the United States will file the notice of dismissal attached hereto as Exhibit A.

4. In exchange for the release set forth in Paragraph 9, CPS agrees to pay $138,000.00 to Relators, for attorneys' fees and costs incurred by Relators, as well as non-intervened claims and retaliation claims. This payment shall be held in escrow by counsel for CPS until Relators agree on a method for distribution and provide notice to counsel for CPS or pursuant to a Court order, whichever is sooner.

5. Subject to the exceptions in Paragraph 10 (concerning excluded claims) below, and conditioned upon the payment of the CPS Settlement Amount and CPS's relinquishment of any right to the Suspended Amount as set forth in Paragraph 1 above, the United States releases CPS, and its subsidiaries, successors and assigns, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Tennessee Medicaid False Claims Act, Tenn. Code. Ann. § 71-5-181 to -185 (the "TMFCA"); the Federal Priority Statute, 31 U.S.C. § 3713, *et seq.*; or the common law theories of payment by mistake, unjust enrichment, and fraud, and any claims that have been asserted in the Civil Action.

6. In consideration of the obligations of CPS set forth in this Agreement, and conditioned upon the payment of the CPS Settlement Amount as set forth in Paragraph 1 above,

---

[2] If Relators, the United States and Tennessee cannot agree as to the distribution of the Relators' share of the CPS Settlement Amount, the Court will make such a determination. Of the Kroll Settlement Amount, the United States will pay Butner and Brown $21,351.83 upon written instructions from their counsel.

6

CPS SETTLEMENT AGREEMENT

the State of Tennessee, on behalf of itself, its officers, agents, agencies, and departments, agrees to release CPS, and its subsidiaries, successors and assigns, from any civil or administrative monetary claim the State of Tennessee has or may have for the Covered Conduct under the TMFCA, or the common law theories of payment by mistake, unjust enrichment, and fraud, any claims that have been asserted in the Civil Action.

7. Subject to the exceptions in Paragraph 10 (concerning excluded claims) below, and conditioned upon Kroll's payment of the Kroll Settlement Amount, the United States releases Kroll, and his successors, heirs and assigns, from any civil or administrative monetary claim the United States has for: the Covered Conduct under the False Claims Act, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, the TMFCA, the Federal Priority Statute, 31 U.S.C. § 3713, *et seq.*, or the common law theories of payment by mistake, unjust enrichment, and fraud; and all other claims that have been asserted in the Civil Action.

8. In consideration of the obligations of Kroll set forth in this Agreement, and conditioned upon the payment of the Kroll Settlement Amount as set forth in Paragraph 1 above, the State of Tennessee, on behalf of itself, its officers, agents, agencies, and departments, agrees to release Kroll, and his successors, heirs and assigns, from: any civil or administrative monetary claim the State of Tennessee has or may have for the Covered Conduct under the TMFCA, or the common law theories of payment by mistake, unjust enrichment, and fraud; and all other claims that have been asserted in the Civil Action.

9. Conditioned upon the payments set forth in Paragraphs 1, 2, 3 and 4 above, Relators, for themselves and for their heirs, successors, attorneys, agents and assigns, release CPS and its owners, including but not limited to Kroll, Richard J. Muench, M.D., Steven R. Dickerson,

7

M.D. and Gilberto A. Carrero, M.D. (collectively, the "Owners"), from: (1) all claims Relators alleged or could have alleged against CPS and the Owners, including all claims relating to the Civil Action and the *qui tam* actions referenced in Paragraph C; (2) any claims under 31 U.S.C. § 3730(d) or Tenn. Code Ann. § 71-5-183(d) for expenses, attorneys' fees, and costs; and (3) any claims under 31 U.S.C. § 3730(h) or Tenn. Code Ann. § 71-5-183(g) for retaliation.

10.     Notwithstanding the releases given in Paragraphs 5 through 8 of this Agreement, or any other term of this Agreement, the following claims of the United States and Tennessee are specifically reserved and are not released:

>      a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code) or
>      state revenue laws;
>
>      b.      Any criminal liability;
>
>      c.      Except as explicitly stated in this Agreement, any administrative liability,
>      including mandatory or permissive exclusion from Federal health care programs;
>
>      d.      Any liability to the United States and Tennessee (or their agencies) for any
>      conduct other than the Covered Conduct;
>
>      e.      Any liability based upon obligations created by this Agreement; and
>
>      f.      Any liability of any other individual or entity for the Covered Conduct that
>      has not already been released.

11.     Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relators' receipt of the payment described in Paragraph 3, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States and

8

Tennessee, and their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action and the *qui tam* actions referenced in Paragraph C or under the False Claims Acts, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

12. CPS and Kroll waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

13. CPS and Kroll fully and finally release the United States and Tennessee, their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that CPS or Kroll asserted, could have asserted or may assert in the future against the United States or Tennessee, their agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' and Tennessee's investigation and prosecution thereof.

14. CPS and Kroll fully and finally release Relators from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that CPS and Kroll asserted, could have asserted or may assert in the future against the Relators related to the Civil Action and/or the *qui tam* actions referenced in Paragraph C.

15. Neither the CPS Settlement Amount nor the Kroll Settlement Amount shall be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any

Case 3:16-cv-00549   Document 200   Filed 07/23/21   Page 9 of 31 PageID #: 1984

state payor (including, without limitation, any TennCare contractor), related to the Covered Conduct; and CPS and Kroll agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals related to the Suspended Amount or any overpayment related to the Covered Conduct.

16.     CPS and Kroll agree to the following:

a.      Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of CPS or Kroll with respect to:

(1)     the matters covered by this Agreement);

(2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     CPS's and Kroll's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payments CPS and Kroll make to the United States pursuant to this Agreement

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, the TRICARE Program, and the Federal Employees Health Benefits Program (FEHBP) and (hereinafter referred to as Unallowable Costs).

10

CPS SETTLEMENT AGREEMENT

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by CPS and Kroll, and CPS and Kroll shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by CPS or Kroll to the Medicare, Medicaid, TRICARE or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: CPS and Kroll further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by CPS or Kroll, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. CPS and Kroll agree that the United States, at a minimum, shall be entitled to recoup from CPS and Kroll any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by CPS or Kroll on the effect

of inclusion of Unallowable Costs (as defined in this Paragraph) on the cost reports, cost statements, or information reports of CPS or Kroll.

           d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the books and records of CPS or Kroll to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17.     This Agreement is intended to be for the benefit of the Parties and releases under this Agreement only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 (waiver for beneficiaries paragraph), below.

18.     CPS and Kroll agree to waive, and shall not seek payment for, any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

19.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

21.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Tennessee. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

12

CPS SETTLEMENT AGREEMENT

22.     This Agreement constitutes the complete agreement between the Parties concerning the Covered Conduct. This Agreement may not be amended except by written consent of the Parties.

23.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25.     This Agreement is binding on CPS's successors, transferees, heirs, and assigns.

26.     This Agreement is binding on Kroll's successors, transferees, heirs, and assigns.

27.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

28.     All Parties consent to the United States' and Tennessee's disclosure of this Agreement, and information about this Agreement, to the public.

29.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

13

## THE UNITED STATES OF AMERICA

DATED: 12/18/2020     BY: _Kara F. Sweet_

                                             KARA F. SWEET
                                             Assistant United States Attorney
                                             Middle District of Tennessee

DATED: 11/17/2020     BY: _Lisa M. Re_

                                             LISA M. RE
                                             Assistant Inspector General for Legal Affairs
                                             Office of Counsel to the Inspector General
                                             Office of Inspector General
                                             United States Department of Health and Human Services

DATED: _____     BY: _____

                                             PATRICIA MARSHAL
                                             General Counsel to the Inspector General
                                             Office of the Inspector General
                                             United States Railroad Retirement Board

## THE UNITED STATES OF AMERICA

DATED: _____        BY: _____
                             KARA F. SWEET
                             Assistant United States Attorney
                             Middle District of Tennessee

DATED: _____        BY: _____
                             LISA M. RE
                             Assistant Inspector General for Legal Affairs
                             Office of Counsel to the Inspector General
                             Office of Inspector General
                             United States Department of Health and Human Services

DATED: 11/10/2020        BY: _____
                             PATRICIA MARSHAL
                             General Counsel to the Inspector General
                             Office of the Inspector General
                             United States Railroad Retirement Board

14

CPS SETTLEMENT AGREEMENT

## THE STATE OF TENNESSEE

DATED: __11/6/2020__     BY: _Hubur H. Slaty III_
                              HERBERT H. SLATERY III
                              Attorney General and Reporter

**ANESTHESIA SERVICES ASSOCIATES, PLLC**

DATED: 11/10/2020    BY: _____

PETER B. KROLL, M.D.
President

DATED: _____    BY: _____

JENNIFER L. WEAVER, ESQ.
Counsel for CPS

**PETER B. KROLL, M.D.**

DATED: 11/10/2020    BY: _____

PETER B. KROLL, M.D.

DATED: _____    BY: _____

DANIEL H. MARTIN, ESQ.
Counsel for Kroll

**ANESTHESIA SERVICES ASSOCIATES, PLLC**

DATED: _____ BY: _____
                        PETER B. KROLL, M.D.
                        President

DATED: 11-9-20 BY: _____
                        JENNIFER L. WEAVER, ESQ.
                        Counsel for CPS

**PETER B. KROLL, M.D.**

DATED: _____ BY: _____
                        PETER B. KROLL, M.D.

DATED: _____ BY: _____
                        DANIEL H. MARTIN, ESQ.
                        Counsel for Kroll

16

**ANESTHESIA SERVICES ASSOCIATES, PLLC**

DATED: _____ BY: _____
PETER B. KROLL, M.D.
President

DATED: _____ BY: _____
JENNIFER L. WEAVER, ESQ.
Counsel for CPS

**PETER B. KROLL, M.D.**

DATED: _____ BY: _____
PETER B. KROLL, M.D.

DATED: *Nov 10/20* BY: _____
DANIEL X. MARTIN, ESQ.
Counsel for Kroll

16

## SUZANNE ALT - RELATOR

DATED: 11/10/20    BY: _____
                        SUZANNE ALT

DATED: 11/11/2020  BY: _____
                        DON McKENNA, ESQ.
                        Counsel for Alt

## MARY BUTNER and DANA BROWN- RELATORS

DATED: _____   BY: _____
                        MARY BUTNER

DATED: _____   BY: _____
                        DANA BROWN

DATED: _____   BY: _____
                        W. GARY BLACKBURN, ESQ.
                        Counsel for Butner and Brown

## JENNIFER PRESSOTTO - RELATOR

DATED: _____   BY: _____
                        JENNIFER PRESSOTTO

DATED: _____   BY: _____
                        JERRY E. MARTIN, ESQ.
                        Counsel for Pressotto

SETTLEMENT AGREEMENT

17

**SUZANNE ALT - RELATOR**

DATED: _____     BY: _____
                              SUZANNE ALT


DATED: _____     BY: _____
                              DON McKENNA, ESQ.
                              Counsel for Alt


**MARY BUTNER and DANA BROWN- RELATORS**

DATED: 11/09/20     BY: *Mary R Butner*
                              MARY BUTNER


DATED: _____     BY: _____
                              DANA BROWN


DATED: 11/9/2020     BY: _____
                              W. GARY BLACKBURN, ESQ.
                              Counsel for Butner and Brown


**JENNIFER PRESSOTTO - RELATOR**

DATED: _____     BY: _____
                              JENNIFER PRESSOTTO


DATED: _____     BY: _____
                              JERRY E. MARTIN, ESQ.
                              Counsel for Pressotto

17

## SUZANNE ALT - RELATOR

DATED: _____    BY: _____
                         SUZANNE ALT


DATED: _____    BY: _____
                         DON McKENNA, ESQ.
                         Counsel for Alt


## MARY BUTNER and DANA BROWN- RELATORS

DATED: _____    BY: _____
                         MARY BUTNER

DATED: 11/9/2020     BY: _____
                         DANA BROWN


DATED: _____    BY: _____
                         W. GARY BLACKBURN, ESQ.
                         Counsel for Butner and Brown


## JENNIFER PRESSOTTO - RELATOR

DATED: _____    BY: _____
                         JENNIFER PRESSOTTO


DATED: _____    BY: _____
                         JERRY E. MARTIN, ESQ.
                         Counsel for Pressotto


CPS SETTLEMENT AGREEMENT

17

## SUZANNE ALT - RELATOR

DATED: _____     BY: _____
                          SUZANNE ALT

DATED: _____     BY: _____
                          DON McKENNA, ESQ.
                          Counsel for Alt

## MARY BUTNER and DANA BROWN- RELATORS

DATED: _____     BY: _____
                          MARY BUTNER

DATED: _____     BY: _____
                          DANA BROWN

DATED: _____     BY: _____
                          W. GARY BLACKBURN, ESQ.
                          Counsel for Butner and Brown

## JENNIFER PRESSOTTO - RELATOR

DATED: 11/7/2020     BY: *Jennifer Pressotto*
                          JENNIFER PRESSOTTO

DATED: 11/10/2020    BY: _____
                          JERRY E. MARTIN, ESQ.
                          Counsel for Pressotto

CPS SETTLEMENT AGREEMENT

17

## ALLISON CHANCELLOR - RELATOR

DATED: 4/16/21     BY: _Allison Chancellor_
                       ALLISON CHANCELLOR

17

<u>**EXHIBIT A**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* SUZANNE ALT, ) | |
| ) | |
| Plaintiff, ) | Civil Case No.: 3:16-cv-00549 |
| ) | JUDGE TRAUGER |
| v. ) | (consolidated) |
| ) | |
| ANESTHESIA SERVICES ASSOCIATES, PLLC, ) | |
| ) | |
| Defendant. ) | Jury Trial |

UNITED STATES OF AMERICA and THE )
STATE OF TENNESSEE *ex rel.* MARY )
BUTNER, and DANA BROWN, )
                )
       Plaintiffs, )      Civil Case No.: 3:16-cv-00561
                )      JUDGE TRAUGER
v.                   )
                )
ANESTHESIA SERVICES ASSOCIATES, PLLC, )
d/b/a COMPREHENSIVE PAIN SPECIALISTS, )
PETER KROLL, STEVEN DICKERSON, )
RONALD WILLIAMS, REX WILLIAMS, )
TIMOTHY BEACHAM, LINDSAY BISHOP, )
GILBERTO CARRERO, DENNIS HARRIS, )
DONALD JONES, FRANK JORDAN, )
ANDREW KELLER, JAMES LADSON, )
BARBARA SCHOOLEY, CHARLES LINDSAY, )
DANIEL MCHUGH, RICHARD MUENCH, )
TODD PEPPER, ANASTASIA TERESCHUK, )
DEANNE THREAPLETON, CODY TURNER, )
J. RANDALL UNDERWOOD, and )
KYLE PAYNE, )
                )
       Defendants. )

[Captions continued on next page.]

UNITED STATES OF AMERICA and the STATE )
OF TENNESSEE *ex rel.* JENNIFER PRESSOTTO, )
                                               )     Civil Case No.:  3:16-cv-01856
        Plaintiffs,            )     JUDGE TRAUGER
v.                                    )
                                               )
ANESTHESIA SERVICES ASSOCIATES, PLLC, )
d/b/a COMPREHENSIVE PAIN SPECIALISTS, )
                                               )
        Defendant.            )

UNITED STATES OF AMERICA and the     )
STATES OF ILLINOIS, INDIANA, IOWA,     )
MICHIGAN, NORTH CAROLINA, TENNESSEE, )
VIRGINIA *ex rel.* ALLISON CHANCELLOR,   )
                                                )
        Plaintiffs,            )     Civil Case No.:  3:19-cv-00102
                                               )     JUDGE TRAUGER
v.                                    )
                                               )
ANESTHESIA SERVICES ASSOCIATES, PLLC )
d/b/a COMPREHENSIVE PAIN SPECIALISTS, )
and PHYMED MANAGEMENT LLC d/b/a    )
PHYMED HEALTHCARE GROUP,          )
                                                )
        Defendants.        )

**JOINT MOTION TO SEVER AND DISMISS ALL CLAIMS
AGAINST DEFENDANTS ANESTHESIA SERVICES, ASSOCIATES, PLLC
d/b/a COMPREHENSIVE PAIN SPECIALISTS AND PETER B. KROLL, M.D.
<u>AND TO DISMISS ALL REMAINING CLAIMS OF RELATORS</u>**

      Pursuant to 31 U.S.C. § 3730(b)(1) and Rules 21 and 41 of the Federal Rules of Civil

Procedure, the United States, Tennessee and Relators, together with Defendants Anesthesia Ser-

vices Associates, PLLC d/b/a Comprehensive Pain Specialists ("CPS") and Peter B. Kroll, M.D.

("Dr. Kroll") hereby move as follows:

      1.     For an order severing all claims against CPS and Dr. Kroll;

2

2.     Dismissing with prejudice the claims of the United States and Tennessee against CPS and Dr. Kroll; and

3.     Dismissing all claims of Relators Suzanne Alt, Mary Butner, Dana Brown, Jennifer Pressotto and Allison Chancellor in the above-captioned actions against all Defendants, including the non-intervened claims, with prejudice, to which the United States and Tennessee consent for the reasons previously stated to the Court.

The United States has authority to represent that the states of Illinois, Indiana, Iowa, Michigan, North Carolina and Virginia, who have not yet made an intervention decision, consent to the dismissal of the actions in which they are named without prejudice as to such States.

Respectfully submitted,

For the United States:

MARY JANE STEWART
Acting United States Attorney
Middle District of Tennessee

By:     s/ Kara F. Sweet
        Kara F. Sweet
        Assistant United States Attorney
        United States Attorney's Office
        110 Ninth Avenue South, Suite A-961
        Nashville, TN  37203
        (615) 736-5151
        kara.sweet@usdoj.gov

For the State of Tennessee:

HERBERT H. SLATERY III
Attorney General & Reporter

By:     s/ Philip H. Bangle
        PHILIP H. BANGLE, BPR 031636
        Assistant Attorney General
        Medicaid Fraud & Integrity Division
        Tennessee Attorney General's Office
        P.O. Box 20207

3

Nashville, TN 37202
Phone: (615) 741-6421
Email: Philip.Bangle@ag.tn.gov

For Relator Suzanne Alt:

By:     s/ Don McKenna
        Don McKenna, Esq.
        Randi McCoy, Esq.
        Hare, Wynn, Newell & Newton, LLP
        2025 Third Avenue, N, Suite 800
        Birmingham, AL  35203
        Phone:  (205) 328-5330
        Email:  don@hwnn.com
        Email:  randi@hwnn.com

        Irwin B. Venick, Esq.
        Dobbins, Venick, Kuhn & Byassee, PLLC
        210 25th Avenue, N, Suite 1010
        Nashville, TN  37203
        Phone: (615) 321-5659
        Email:  irwinv@dvlawfirm.com

For Relators Mary Butner and Dana Brown:

By:     s/ W. Gary Blackburn
        W. Gary Blackburn, Esq.
        Bryant B. Kroll, Esq.
        The Blackburn Firm, PLLC
        213 Fifth Avenue North, Suite 300
        Nashville, TN  37219
        Phone: (615) 254-7770
        Email: gblackburn@wgaryblackburn.com
        Email:  bkroll@wgaryblackburn.com

        Jeffery S. Roberts, Esq.
        Jeffery S. Roberts and Associates, PLC
        213 Fifth Avenue North, Suite 300
        Nashville, TN 37219
        Phone: (615) 425-4400
        Email:  jeff@middletninjury.com

For Relator Jennifer Pressotto:

By:     s/ Jerry E. Martin

4

Jerry E. Martin, Esq.
Seth Marcus Hyatt, Esq.
Barrett Johnson Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Phone: (615) 244-2202
Email: jmartin@barrettjohnston.com
Email: shyatt@barrettjohnston.com

For Relator Allison Chancellor:

By: s/ Allison Chancellor
Allison Chancellor
101 E. Main Street, Suite A
Samson, AL 36477
(334) 488-1134

For Defendant Anesthesia Services Associates, PLLC
d/b/a Comprehensive Pain Specialists:

By: s/ Jennifer L. Weaver
Jennifer L. Weaver, Esq.
Andrew F. Solinger, Esq.
L. Wells Trompeter, Esq.
Waller, Lansden, Dortch & Davis, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
Phone: (615) 244-6380
Email: Jennifer.weaver@wallerlaw.com
Email: Andrew.Solinger@wallerlaw.com
Email: wells.trompeter@wallerlaw.com

For Defendant Peter B. Kroll, M.D.:

By: s/ Daniel J. Martin
Daniel J. Martin, Esq.
Jones Walker LLP
420 20th Street North, Suite 1100
Birmingham, AL 35203
Phone: (205) 244-5307

5

Email: danielmartin@joneswalker.com

Avery B. Pardee, Esq.
Michael W. Magner, Esq.
Michael J. O'Brien, Esq.
Jones Walker LLP
201 St. Charles Avenue, 47th Floor
New Orleans, LA 70170-5100
Phone: (504) 582-8000
Email:  apardee@joneswalker.com
Email: mmagner@joneswalker.com
Email: mobrien@joneswalker.com

David Louis Raybin, Esq.
Raybin Raybin & Weissman, P.C.
424 Church Street, Suite 2120
Nashville, TN 37219
Phone: (615) 256-6666
Email: draybin@nashvilletnlaw.com

6

## CERTIFICATE OF SERVICE

I certify that on July 23, 2021, a true and correct copy of the foregoing was served via the Court's CM/ECF system, if registered. A service copy also was served via First Class U.S. Mail, postage prepaid, and/or via email, if not registered, to the following:

| | |
|---|---|
| Don McKenna, Esq.<br>Randi McCoy, Esq.<br>Hare, Wynn, Newell & Newton, LLP<br>2025 Third Avenue, N, Suite 800<br>Birmingham, AL 35203<br>don@hwnn.com<br>randi@hwnn.com<br><br>Irwin B. Venick, Esq.<br>Dobbins, Venick, Kuhn & Byassee, PLLC<br>210 25th Avenue, N, Suite 1010<br>Nashville, TN 37203<br>irwinv@dvlawfirm.com<br>*Counsel for Relator Suzanne Alt*<br><br>W. Gary Blackburn, Esq.<br>Bryant A. Kroll, Esq.<br>The Blackburn Firm, PLLC<br>213 Fifth Avenue North, Suite 300<br>Nashville, TN 37219<br>gblackburn@wgaryblackburn.com<br>bkroll@wgaryblackburn.com<br><br>Jeffery S. Roberts, Esq.<br>Jeffery S. Roberts and Associates, PLC<br>213 Fifth Avenue North, Suite 300<br>Nashville, TN 37219<br>jeff@middletninjury.com<br>*Counsel for Relators Mary Butner*<br>*and Dana Brown*<br><br>Peter J. Strianse, Esq.<br>Tune, Entrekin & White, P.C.<br>315 Deaderick Street, Suite 1700<br>Nashville, TN 37238<br>pstrianse@tewlawfirm.com<br>*Counsel for John Davis* | Jerry E. Martin, Esq.<br>Seth Marcus Hyatt, Esq.<br>Barrett Johnson Martin & Garrison, LLC<br>Bank of America Plaza<br>414 Union Street, Suite 900<br>Nashville, TN 37219<br>jmartin@barrettjohnston.com<br>shyatt@barrettjohnston.com<br>*Counsel for Relator Jennifer Pressotto*<br><br>Allison Nicole Chancellor<br>101 E. Main St (Suite A)<br>Samson, AL 36477<br>qui_tam_email@protonmail.com<br>*PRO SE*<br><br>Philip H. Bangle<br>Assistant Attorney General<br>Medicaid Fraud & Integrity Division<br>Tennessee Attorney General's Office<br>P.O. Box 20207<br>Nashville, TN 37202<br>Philip.Bangle@ag.tn.gov<br>*Counsel for the State of Tennessee*<br><br>Jennifer L. Weaver, Esq.<br>Andrew Solinger, Esq.<br>L. Wells Trompeter, Esq.<br>Waller, Lansden, Dortch & Davis, LLP<br>Nashville City Center<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>Jennifer.weaver@wallerlaw.com<br>Andrew.Solinger@wallerlaw.com<br>wells.trompeter@wallerlaw.com<br>*Counsel for Defendant Anesthesia Services*<br>*Associates, PLLC* |

 s/ Kara F. Sweet
KARA F. SWEET